FILED IN OPEN COURT
JACKSONVILLE, FLORIDA
8/18/26
U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 3:25-cr-241-TJC-PDB

MARCUS EICHELBERGER

# PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, the defendant, Marcus Eichelberger, and the attorney for the defendant, Patrick Korody, Esq., mutually agree as follows:

## A. Particularized Terms

### 1. Counts Pleading To

The defendant shall enter a plea of guilty to Counts Three and Four of the Indictment. Counts Three and Four charge the defendant with Wire Fraud and aiding and abetting Wire Fraud, in violation of 18 U.S.C. §§ 2 and 1343.

### 2. Minimum and Maximum Penalties

Counts Three and Four are each punishable by a term of imprisonment of up to 20 years; a fine of up to $250,000 or twice the gross gain from the offense or twice the gross loss from the offense, whichever is greater; or both a term of imprisonment and a fine; a term of supervised release of up to three years; and a special assessment of $100 per count, which is due at the time of sentencing. A violation of

the terms and conditions of supervised release is punishable by up to two additional years of imprisonment, as well as the possibility of an additional term of supervised release.

The cumulative penalties for Counts Three and Four are a term of imprisonment of up to 40 years; a fine of up to $500,000 or twice the gross gain from the offenses or twice the gross loss from the offenses, whichever is greater; or both a term of imprisonment and a fine; a term of supervised release of up to three years; and a special assessment of $200. A violation of the terms and conditions of supervised release is punishable by up to four additional years of imprisonment, as well as the possibility of an additional term of supervised release.

3. Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which the defendant has been charged and to which the defendant is pleading guilty. The elements of Counts Three and Four are:

First: the defendant knowingly devised or participated in, or aided and abetted, a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

Second: the false pretenses, representations, or promises were about a material fact;

Third: the defendant acted with the intent to defraud; and

Fourth: the defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

4. Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts One and Two, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses that are known to the United States Attorney's Office at the time of the execution of this agreement, related to the specific conduct described in particularity in the factual basis of this plea agreement.

6. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a

downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the $19,000 in wire fraud proceeds the defendant admits he obtained as the result of the commission of the offenses charged in Counts Three and Four, to which the defendant is pleading guilty. The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offenses, and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute

assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is

Defendant's Initials ______

omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

8. <u>Mandatory Restitution to Victim of Offenses of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), the defendant agrees to make full restitution to the United States in the amount of $49,999, to be owed jointly and severally with T.M.

9. <u>Additional Restitution for Relevant Conduct - Agreed Upon Amount</u>

Pursuant to 18 U.S.C. §§ 3663(a)(3) and/or 3663A(a)(3), the defendant agrees to additional restitution to the United States in the amount of $129,900, to be owed jointly and severally with J.B. The defendant also agrees to additional restitution to the United States in the amount of $129,900. In total, defendant agrees to restitution

in the amount of $259,800 to the United States related to his relevant conduct, and in addition to the $49,999 referenced in paragraph 8.

**B. Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied. On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's

financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present

arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant

is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if

any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 18th day of ~~July~~ August 2026.

GREGORY W. KEHOE
United States Attorney

MARCUS EICHELBERGER
Defendant

KELLI A. SWANEY
Assistant United States Attorney

PATRICK KORODY, ESQ.
Attorney for Defendant

MICHAEL J. COOLICAN
Assistant United States Attorney
Chief, Jacksonville Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 3:25-cr-241-TJC-PDB

MARCUS EICHELBERGER

PERSONALIZATION OF ELEMENTS

**Count Three**

1. Between in or about March 2021 and in or about February 2022, did you knowingly devise, participate in, and aid and abet, a scheme to defraud or obtain money or property by using false pretenses, representations, or promises, specifically, to submit SBA Form documents to obtain Paycheck Protection Program (PPP) loans, and loan forgiveness, to which you and Individual-1 were not entitled?

2. Were the false pretenses, representations, or promises about a material fact, that is, obtaining PPP loans and forgiveness for those PPP loans, based on false information concerning a fictitious food catering business in the name of "Talia McIntyre"?

3. Did you act with intent to defraud when you aided and abetted Individual-1 in submitting SBA Form 3508S (PPP Loan Forgiveness Application Form) on February 11, 2022, requesting that the SBA forgive $20,833 for a PPP loan ending in 8706?

Defendant's Initials________

4. On February 11, 2022, did you aid and abet Individual-1 in transmitting, via an interstate wire communication, SBA Form 3508S for a PPP loan ending in 8706 using an electronic portal to Fountainhead Commercial Capital, a lending institution with servers or data processing centers outside of Florida?

**Count Four**

1. Between in or about March 2021 and in or about February 2022, did you knowingly devise, participate in, and aid and abet, a scheme to defraud or obtain money or property by using false pretenses, representations, or promises, specifically, to submit SBA Form documents to obtain Paycheck Protection Program (PPP) loans, and loan forgiveness, to which you and Individual-1 were not entitled?

2. Were the false pretenses, representations, or promises about a material fact, that is, obtaining PPP loans and forgiveness for those loans, based on false information concerning a fictitious food catering business in the name of "Talia McIntyre"?

3. Did you act with intent to defraud when you aided and abetted Individual-1 in submitting SBA Form 3508S (PPP Loan Forgiveness Application Form) on February 11, 2022, requesting that the SBA forgive $29,166 for a PPP loan ending in 8900?

4. On February 11, 2022, did you aid and abet Individual-1 in transmitting, via an interstate wire communication, SBA Form 3508S for a PPP loan ending in 8900

using an electronic portal to Fountainhead Commercial Capital, a lending institution with servers or data processing centers outside of Florida?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 3:25-cr-241-TJC-PDB

MARCUS EICHELBERGER

FACTUAL BASIS

**Overview**

This is a Paycheck Protection Program (PPP) loan fraud, in which Marcus EICHELBERGER and Individual-1 partnered to obtain two PPP loans for a food catering business identified as "Talia McIntyre," which did not exist.

The passage of the CARES Act authorized of up to $349 billion in Small Business Administration (SBA) guaranteed forgivable loans to small businesses through the PPP. To obtain a PPP loan, a qualifying business submitted a PPP loan application (SBA Form 2483), which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business was required to provide certain important information, including: (a) payroll expenses; and (b) 2019 or 2020 gross income figures. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming payroll expenses and/or annual gross income figures.

Defendant's Initials ME

Further, individuals had to report and document their income and expenses from a sole proprietorship, as typically reported to the Internal Revenue Service (IRS) on Form 1040, Schedule C, for a given tax year.

The CARES Act required PPP loan applications to be processed by a participating lender (such as Fountainhead Commercial Capital in this instance). If a PPP loan application was approved, the participating lender would fund the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, nature of the business, the total amount of the loan, and the listed gross income on the Schedule C filing with the IRS, were transmitted electronically by the lender to the SBA in the course of processing the loan. PPP loans under $150,000 were forgiven without the need to show how the money was used. The borrower merely had to certify on an SBA Form 3508S that the loan funds were used for authorized purposes. Applications for "PPP Round Two," defined as applications received after January 11, 2021, were received through a cloud-based platform via a server located in Northern California.

In 2024, the Department of Veterans Affairs Office of Inspector General (VA-OIG) became aware of two PPP loans obtained by Individual-1 that were potentially fraudulent. As part of the investigation, VA-OIG agents spoke with Individual-1, who agreed to participate in a voluntary interview and relayed the following information. In or about late 2020 to early 2021, EICHELBERGER approached Individual-1, who was a congregant at the church at which EICHELBERGER was employed as a pastor. He told her that he wanted to help people in financial distress and that there was a way

to obtain "free money" that she would not have to repay. Individual-1 agreed to participate. EICHELBERGER prepared both of the PPP loan applications described below and sent them via electronic mail to Individual-1 to sign, initial, and submit, which she did. Further, EICHELBERGER created the fraudulent Schedule C documents described below and provided them to Individual-1 to submit with the PPP applications.

At the direction of EICHELBERGER, Individual-1 applied for and received a total of $49,999 from two PPP loans that she electronically applied for on March 30, 2021 and April 12, 2021. Individual-1 stated in the PPP loan applications that she operated as an independent contractor for a food catering business named "Talia McIntyre" with an annual gross income of $164,872. The Florida Division of Corporations website has no record of a business named "Talia McIntyre." The Florida Department of Business and Professional Regulation has no record of Individual-1 having a license to conduct food operations. The individual loans are detailed below.

**PPP Loan 786848706 – March 30, 2021 PPP Loan for "Talia McIntyre"**

On March 30, 2021, Individual-1 electronically submitted an SBA Form 2483-C (PPP Borrower Application Form for Schedule C Filers Using Gross Income) to Fountainhead Commercial Capital, in which Individual-1 requested a PPP loan under the auspices that she was an independent contractor providing food catering services under the business name "Talia McIntyre." The application stated that Individual-1 became an independent contractor on January 1, 2015, and that in tax year 2019,

earned a gross income of $164,872. The submitted Schedule C contained the gross income figure, and various claimed expenses, including: Advertising ($19,500), contract labor ($12,510), insurance ($3,400), vehicles/machinery/equipment ($5,754), repairs/maintenance ($14,990), legal and professional services ($1,399), and other expenses. None of that was true. Individual-1 did not submit an IRS Form Schedule C to the IRS for tax year 2019 supporting any food-related business, as claimed in the two PPP loan applications.

On April 21, 2021, Fountainhead deposited $20,833 into Individual-1's Bank of America account ending in 1564. On February 11, 2022, Individual-1 electronically submitted an SBA Form 3508(S) (PPP Loan Forgiveness Application Form) to Fountainhead, at the direction of, and with the assistance of, EICHELBERGER. Specifically, EICHELBERGER instructed Individual-1 on what she should say in each field of the application. Fountainhead had no servers in Florida at that time. Individual-1 initialed a box on the form that certified she complied with all requirements in the PPP rules, including rules related to eligible uses of the PPP loan proceeds. Individual-1 also initialed a box that affirmed all of the information in the forgiveness application was true and correct in all material respects, that she followed the PPP rules throughout, as well as admonitions about false statements and the illegality of them in the PPP loan process. On February 16, 2022, the SBA forgave the PPP loan.

**PPP Loan 2591618900 – April 12, 2021 PPP Loan for "Talia McIntyre"**

On April 12, 2021, Individual-1 electronically submitted an SBA Form 2483-SD (PPP Second Draw Borrower Application Form for Schedule C Filers using Gross Income) to Fountainhead, in which Individual-1 requested a second draw in the amount of $29,166. Individual-1 averred (as in the first draw) that all of the information therein was true and correct. On May 5, 2021, Fountainhead deposited $29,166 into Individual-1's BOA account ending in 1564.

On February 11, 2022, Individual-1 electronically submitted an SBA Form 3508(S) to Fountainhead, at the direction of, and with the assistance of, EICHELBERGER, in which Individual-1 applied for forgiveness on the second draw of the PPP loan. Specifically, EICHELBERGER instructed Individual-1 on what she should say in each field of the application. Individual-1 made the same acknowledgements, including those regarding the rules related to eligible uses. On February 16, 2022, the SBA forgave Individual-1's PPP second loan in the amount of $29,166.

**Proceeds of the PPP Loans**

The financial analysis of the loan proceeds revealed that Individual-1 transferred $19,000 to EICHELBERGER and used the remaining $30,999 to make cash withdrawals and pay personal expenses. The loan money was not used for any authorized PPP purpose.

**Text Messages between Individual-1 and EICHELBERGER**

The following is a synopsis of select text messages between Individual-1 and EICHELBERGER, which were obtained from a lawful search of Individual-1's cell phone.

- March 26, 2021 – EICHELBERGER informed Individual-1 that he was working on the PPP application, and instructed Individual-1 to forward all emails and verification codes that she received to EICHELBERGER at a specific email address.

- April 6, 2021 – EICHELBERGER sent a text to Individual-1 telling her to sign a PPP loan related document.

- April 19, 2021 – Individual-1 sent a text to EICHELBERGER telling EICHELBERGER that she received the PPP loan money, after which EICHELBERGER sent Individual-1 a text asking her to send a "processing and documentation fee" to either of his BOA accounts (a $5,000 transfer).

- April 20, 2021 – EICHELBERGER sent a text message to Individual-1 stating, "Use the money wisely and don't spend most of it on others!! LOL…" and "Spending it on yourself is ABSOLUTELY ACCEPTABLE[.]"

- May 6, 2021 – Individual-1 sent EICHELBERGER a text that informed him that she would transfer two payments of $7,000 to EICHELBERGER's bank account.

- February 11, 2022 EICHELBERGER sent a text to Individual-1, in which they coordinated later that day to complete the PPP loan forgiveness applications by EICHELBERGER "walk[ing] you through the prompts to completion. Should they ask for any information you don't have, I can provide you with expeditiously."

**Additional Relevant Conduct**

During this investigation, VA-OIG agents became aware that EICHELBERGER was involved in other fraudulent PPP loans. Specifically, federal agents became aware of a fraudulent Economic Injury Disaster Loan (EIDL) that was obtained by Individual-2 in June 2020. Individual-2 was another former congregant of the church at which EICHELGERGER was employed as a pastor during the events described below.

In addition to PPP loans, another source of relief provided by the CARES Act was the expansion of eligibility for EIDLs, a type of disaster loan made directly to businesses to cover operating expenses, including fixed debts, payroll, accounts payable, and other bills that cannot be paid due to the economic impact of a disaster. The CARES Act also authorized payments known as emergency EIDL grants, or "advances," which did not require repayment, as opposed to EIDL loans, which were to be repaid in full. To obtain an EIDL, eligible small businesses applied directly with the SBA to an online portal. The applications were processed by the SBA and, if approved, disbursed by the U.S. Department of the Treasury (Treasury).

On June 24, 2020, Individual-2 applied for an EIDL via the SBA online portal under the auspices that he was CEO of a company named "Justin Burns," a purported small business in Jacksonville, Florida. Individual-2 also requested an EIDL advance. On June 30, 2020, Treasury deposited an EIDL advance of $10,000 into Individual-2's bank account and on July 1, 2020, Treasury deposited $119,900 into Individual-2's bank account. On the same day (July 1, 2020), Individual-2 sent EICHELBERGER

$1,000 via Cash App and on July 5, 2020, Individual-2 wrote a check to EICHELBERGER in the amount of $30,000. Both transfers were from proceeds of the EIDL and EIDL advance applied for by Individual-2 with the assistance of EICHELBERGER.

In August 2025, Individual-2 was voluntarily interviewed by VA-OIG agents. Individual-2 stated that, at some point in 2020, EICHELBERGER approached him, stated that he worked for a company that helped people, and asked Individual-2 if he would like $10,000, to which Individual-2 replied that he would. At EICHELBERGER's request, Individual-2 sent EICHELBERGER Individual-2's personal information. EICHELBERGER then directed Individual-2 to go to the SBA web portal, input his (Individual-2's) personal information, and request the maximum amount of money, to which Individual-2 complied. Subsequently, Individual-2 provided his login information to EICHELBERGER, who filled in the remaining information about the "Justin Burns" business which never existed. EICHELBERGER then told Individual-2 to electronically sign the EIDL documents, and Individual-2 complied.

Individual-2 acknowledged receiving the EIDL advance of $10,000 and EIDL of $119,900 in his bank account and stated that he paid EICHELBERGER a total of $31,000 at EICHELBERGER's request. Individual-2 acknowledged that he never owned any small business which would be eligible for an EIDL and that he spent the remaining funds (approximately $98,900) on personal expenses, including giving some to the church at which EICHELBERGER was employed as a pastor. Individual-2

stated he took the actions described above from his residence located in Jacksonville, FL. At the time of Individual-2's application, EIDL applications were processed in Iowa and the subsequent funds disbursement would have originated with servers located outside of Florida.

Subsequently, EICHELBERGER used Individual-2's information to apply for an additional EIDL (loan 62392981-04) from the SBA for business by the name of "Villa Rica." As a result, EICHELBERGER obtained another $119,900 to which he was not entitled. EICHELBERGER used false information to apply for this EIDL and did not use the EIDL funds for lawful purposes. Finally, EICHELBERGER applied for another EIDL loan (application no. 3000020769). This EIDL was denied, but EICHELBERGER received a $10,000 EIDL advance to which he was not entitled.[1]

[1] The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.